H<span>OUGHTON</span>, C.J., and S<span>EINFELD</span>, J., concur.

[No. 20215-8-II.   Division Two.   September 5, 1997.]

S<span>COTT</span> L. H<span>AVSY</span>, <span>ET AL.</span>, *Appellants*, v. F<span>REDERICK</span> G. F<span>LYNN</span>, <span>ET AL.</span>, *Respondents*.

merely permitted, to condition service of the warrant on an officer seeing some-one take the package into Goble's home.

516

*Sanford C. Cox III*; and *Christopher A. Benson* of *deMers and Benson, Inc., P.S.*, for appellants.

*Maureen M. Falecki* and *Timothy R. Gosselin* of *Burgess, Fitzer, Leighton & Phillips, P.S.*; and *Nigel S. Malden* of *Davies Pearson, P.C.*, for respondents.

MORGAN, J. — On July 1, 1995, Mary Runions was injured in an auto accident. State Farm Insurance Company was obligated to pay her reasonable and necessary medical expenses by virtue of its applicable PIP coverage. Runions sought treatment from Dr. Scott L. Havsy, and State Farm asked Independent Medical Services (IMS) to review her records and give an opinion on whether Havsy's charges were reasonable and necessary.

IMS had Dr. Frederick G. Flynn perform the review. He

found that Runions' medical records did not contain a summary of her medical history, or the results of a general physical and neurological examination.[1] He further found that certain diagnostic tests performed by Dr. Havsy have "never been shown to be of benefit in reducing the amount of time required for treatment or more favorable prognosis,"[2] and that the tests were not necessary or reasonable. As a result of Dr. Flynn's review, State Farm denied PIP payments for at least part of the treatment provided by Dr. Havsy.

At some point, Runions assigned her rights against State Farm to Dr. Havsy. Dr. Havsy then filed a claim against Dr. Flynn and IMS for tortious interference with a business relationship, alleging in part:

> There existed a valid contractual relationship or business expectancy; the defendants had knowledge of that relationship; an intentional interference inducing or causing a breach or termination of the relationship or expectancy occurred; the defendants interfered for improper purpose or used improper means; and, as a result, the plaintiff was damaged.[3]

The complaint did not allege that Runions suffered any damage.

Relying on CR 12(b)(6), Dr. Flynn and IMS moved to dismiss for failure to state a claim on which relief could be granted. The trial court granted the motion and ordered Dr. Havsy to pay sanctions for filing a frivolous lawsuit. Dr. Havsy now appeals both the order of dismissal and the award of sanctions.

## I. THE ORDER OF DISMISSAL

█ █ When a plaintiff files a complaint, he or she must make "a short and plain statement of the claim showing that [he or she] is entitled to relief" and "a demand for

---

[1] Dr. Havsy alleges that Dr. Flynn's statements on this point are inaccurate.

[2] Clerk's Papers at 4.

[3] Clerk's Papers at 4.

judgment for the relief to which he [or she] deems himself [or herself] entitled."[4] According to two noted commentators, this means that "the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial."[5] And according to our Supreme Court, a complaint sounding in tort must show, at a minimum, "(1) [a] legal wrong, and (2) damages foreseeably resulting therefrom."[6]

When a defendant believes that a plaintiff has failed to state a claim, he or she may bring a CR 12(b)(6) motion. Such a motion, however, may properly be granted only when it appears beyond doubt that the plaintiff cannot prove any set of facts that would (a) be consistent with the complaint and (b) warrant relief.[7] Thus, a CR 12(b)(6) motion may not properly be granted if even a hypothetical set of facts is conceivably raised by the complaint and legally sufficient to support a claim.[8]

Havsy sues for intentional interference with a contract or expectancy. Thus, his complaint must give rise to at least one set of facts that would prove the following elements:

(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or caus-

---

[4]CR 8(a).

[5]5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, 156-59 (2d ed. 1990) (quoted in 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, 123 (1992)).

[6]*Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962); 3A ORLAND & TEGLAND, note 1, at 123.

[7]*Bravo v. Dolsen Co.*, 125 Wn.2d 745, 750, 888 P.2d 147 (1995); *Haberman v. WPPSS*, 109 Wn.2d 107, 120, 744 P.2d 1032, 750 P.2d 254 (1988).

[8]*Bravo*, 125 Wn.2d at 750; *Halvorson v. Dahl*, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978).

ing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and; (5) resultant damage.[9]

Havsy sues in two capacities: (1) as Runion's assignee, and (2) in his own right. Insofar as he sues as Runions' assignee, he cannot recover more than Runions could recover.[10] Runions could recover only for "resultant damage" (i.e., for damages caused to her by the defendants). As already noted, Havsy's complaint fails to allege that Runions suffered *any* damages at the hands of the defendants; indeed, it even fails to allege that Runions suffered any damages at all. It follows that Havsy has failed to state a claim in his capacity as Runions' assignee.

Insofar as Havsy sues in his own right, he can recover only if he can prove interference that was "purposefully improper," or that involved "an improper objective or the use of wrongful means that in fact cause[d] injury."[11] Generally, "[e]xercising in good faith one's legal interests is not improper interference."[12] Specifically, according to RESTATEMENT (SECOND) OF TORTS § 772,

One who intentionally causes a third person not to perform a contract or not to enter into a prospective contractual relation with another does not interfere improperly with the other's contractual relation, by giving the third person

(a) truthful information, or

---

[9]*Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997); *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992).

[10]*Morse Electro Prods. Corp. v. Beneficial Indus. Loan Co.*, 90 Wn.2d 195, 198, 579 P.2d 1341 (1978); *Home Indem. Co. v. McClellan Motors, Inc.*, 77 Wn.2d 1, 3, 459 P.2d 389 (1969); *Nelson v. Bailey*, 54 Wn.2d 161, 168, 338 P.2d 757 (1959).

[11]*Liengang*, 131 Wn.2d at 157.

[12]*Liengang*, 131 Wn.2d at 157.

(b) honest advice within the scope of a request for the advice.[13]

■ Under Washington law, RESTATEMENT § 772 describes a specific application of the fourth element of the tort of intentional interference.[14] Thus, the plaintiff must be able to produce a set of facts showing dishonesty or bad faith, for the plaintiff generally has the burden of proving the elements of the tort on which he or she sues. But even if § 772 sets up a conditional or qualified privilege, as opposed to an element of the tort, the same result obtains. Just as the burden of asserting a conditional or qualified privilege rests on the one asserting it, the burden of asserting an abuse of privilege rests on the one asserting it, and here that one is the plaintiff.[15]

Applying these principles to Havsy's complaint, we see that he had a contractual relationship with Runions and, we assume, arguendo, an expectancy from State Farm. It is undisputed that State Farm hired IMS and Flynn to provide advice on whether Havsy's charges were reasonable and necessary. If Havsy now desires to use that advice as a basis for establishing intentional interference with a contract or a business expectancy, he must allege and prove, without violating CR 11, that the advice was rendered dishonestly or in bad faith; in other words, he must allege and prove facts constituting the fourth element of the pertinent tort, if § 772 describes an element, or an abuse of qualified privilege, if § 772 describes a qualified privilege. Based on what his complaint says, however, there is no set of facts showing dishonesty or bad faith. Hence, he has failed to state a claim in his own right.

---

[13]RESTATEMENT (SECOND) OF TORTS § 772 (1979).

[14]See Pleas v. City of Seattle, 112 Wn.2d 794, 804, 774 P.2d 1158 (1989); Kieburtz & Assocs., Inc. v. Rehn, 68 Wn. App. 260, 267, 842 P.2d 985 (1992).

[15]See Gilman v. MacDonald, 74 Wn. App. 733, 738-39, 875 P.2d 697 (1994); Story v. Shelter Bay Co., 52 Wn. App. 334, 341-42, 760 P.2d 368 (1988); RESTATEMENT (SECOND) OF TORTS § 613(1)(h) (dealing with defamation).

## II. THE AWARD OF SANCTIONS

■ Sanctions against an attorney are awarded under CR 11. Sanctions against a party are awarded under RCW 4.84.185,[16] and must be supported by written findings. Thus, the Supreme Court has said:

> The frivolous lawsuit statute has a very particular purpose: that purpose is to discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases. The statute is not to be used in lieu of more appropriate pretrial motions, CR 11 sanctions or complaints to the bar association. The statute provides for the nonprevailing *party*, not that party's *attorney*, to pay attorneys' fees and costs.[17]

Here, we cannot tell if the trial court really awarded sanctions. We have only its order dated October 17, 1995, which states that "plaintiffs are obligated to pay monetary sanctions to the defendants in an amount to be determined by further Court order."[18] As far as we know, no "further Court order" was ever made.

■ Assuming sanctions were awarded, it is clear from the October 17 order that they were awarded against the party rather than the attorney. Hence, they were awarded under RCW 4.84.185, and they must be supported by written findings. Yet no order and no findings appear in the

---

[16]RCW 4.84.185 provides:

In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross-claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross-claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after a voluntary or involuntary order of dismissal, order on summary judgment, final judgment after trial, or other final order terminating the action as to the prevailing party. The judge shall consider all evidence presented at the time of the motion to determine whether the position of the nonprevailing party was frivolous and advanced without reasonable cause. In no event may such motion be filed more than thirty days after entry of the order.

[17]*Biggs v. Vail*, 119 Wn.2d 129, 137, 830 P.2d 350 (1992).

[18]Clerk's Papers at 37.

record on appeal. Because of these defects, we are unable to review any award of sanctions that might have been made.

Affirmed.

BRIDGEWATER, A.C.J., and ARMSTRONG, J., concur.